McCoun, J. (dissenting.)
I shall pass over several objections which have been taken preliminarily to the appellant’s title to the chose in action which forms the subject of this suit, and come directly to the question whether John Lintner, the original assignor of the claim, had such a claim as he could have enforced against Van Evera, the defendants’ testator. This depends upon the effect to be given to the agreement of the 8th February, 1836, signed by Van Evera, and the inquiry is, what liability did it create on the part of Van Evera, to the Lintners (Abraham and John), who are mentioned in it? It is necessary to look at the situation of the parties and of the property to which it relates at the time it was signed, in order to understand more readily the object or design of the instrument. It was so drawn as to express all that the parties intended, and all that was essential to secure to the Lintners their rights as between them and Van Evera.
[The learned judge here recited the facts and agreement as they are before stated.]
*252 Two things are provided for in the agreement, and two only: 1. The conditional character of the judgment confessed by the Lintners; showing it was intended for an indemnity only, and was to be used for no other purpose; 2. In certain events or upon the happening of certain contingencies, the Lintners should be entitled to receive something out of the property on account of what they might pay on judgments against them as endorsers of Nellis. For the latter purpose it states, that they as endorsers have had and are having judgments against them in courts of record: “Now I (Van Evera), promise them and each of them, that if and whenever I dispose of said tavern stand and appurtenances, or any part thereof, I shall realize from such sale more than $2500, and interest thereon to the day of sale, that I will pay to them such overplus to the extent, and no further, that they or either of them shall have paid on the judgments aforesaid, for the benefit of Nellis, and interest thereon.”
It is claimed for this promise, in the first place, that it creates a trust, one of the class of express trusts allowed by statute, “ to sell lands for the benefit of creditors.” If such a trust was created, it was an imperative one which Van Evera was bound to perform, from the moment he accepted the conveyance. But where is the evidence of such a trust? It. is not to be found in the deed by which the property was conveyed to Van Evera, for that is absolute in its terms and expresses no such purpose.
There is no pretence of any separate deed or other instrument between Van Evera and Nellis, by which such a trust was declared or reserved; nor is there anything in the nature of the arrangement which was made for placing the property in the hands of Van Evera, which necessarily carries with it the idea of such a trust. If there is anything about the transaction at all, calculated to take from it the character of an absolute sale of the property, by Nellis to Van Evera, for the consideration of $2500, it is that as between *253 them it was intended to be a security only in the nature of a mortgage for that amount of money advanced. I do not understand, however, that such a view of the transaction is contended for ; or, if it were, how it could help the appellant’s case.
Then what is there in the language of the instrument to show a trust of the character contended for? In terms it is a promise to pay them a surplus on three contingencies: 1. If he should sell the property; 2. If he should realize from a sale more than $2500, and the interest; 3. If the Lintners should have paid anything on judgments against them, as endorsers of Nellis. Whether he would sell the property or not, and when, and the manner of sale, is, according to the language of the instrument, left entirely at the option of Van Evera. This is very far from an assumption of a trust to sell at all events, or within a reasonable time, when no time is specified. Besides; if a trust of that sort attached to the property in the hands of Van Evera, why was not the instrument so drawn as to express it in terms? It was very easy to have done so, and yet the word “trust” isnotused. Again, if trust property, something in all probability would have been said about the rents, and how they were to be applied. It is in proof that the premises were worth an annual rent of from $500 to $600; yet no mention is made of his being bound to account for the application of the rents in any way. So far from it, the stipulation expressly is, that if he shall realize from the sale of the property—not from the sale and the income combined, but from the sale alone—more than $2500, and interest thereon to the day of sale, the surplus he will pay over.
In any view of the case arising from this agreement, and we have no other guide than what its language furnishes, it appears to me we are not at liberty to regard it as evidence of any trust which Van Evera was bound to execute for the benefit of Lintner. If we have the power to extend its meaning, so as to give it that effect by equitable construe *254 tion, I should not feel inclined to exercise it in a case got up under such circumstances as the present. But I apprehend we have no such power. The defendants have a right to demand clear and positive evidence of a trust expressly created with a view to a sale for the benefit of creditors. The creation of such a trust ought not to be left to inference. Our laws recognize no implied or resulting trusts in lands in favor of creditors, unless there has been a fraudulent conveyance by the debtor, or a fraudulent investment of his money in a purchase in the name of another person. Fraud is not alleged as any ingredient of the present case. Then if there was not a trust—if Van Evera did not take the property under a trust to sell for the benefit of the Lintners as creditors—the claim against him as trustee, founded upon a supposed breach of trust in not selling the property, fails; and the appellant must seek some other ground on which to establish a claim. What other ground has he to stand upon? Van Evera never sold the property. After holding the title about six weeks, he reconveyed it to Nellis, with his consent, but without the knowledge or consent, at the time, of the Lintners. He received no money back from Nellis on reconveying the property to him, but to secure himself for the money he had advanced, he obtained from the judgment creditors assignments of their judgments. Was this surrender of the property to the former owner, in the same condition in which he received it, any breach of his promise or agreement with the Lintners ?
The promise was to pay them the surplus. Its performance depended on two conditions: a sale, and a price obtained exceeding a certain amount. Assuming it to be a valid promise, and one which Van Evera could not refuse to perform, although the first condition was made to depend on his own will (1 Pothier, 28, 29, 114), yet the second, that the property must bring over and above a certain amount, was one not depending on his will, but on the minds of others, which he could not control; and before any liability *255 could arise upon the promise, it must be made to appear, affirmatively, that this condition was practicable, that he could and might have made a sale, which would have produced a surplus. The evidence on this subject should be conclusive, not resting in mere opinion, or upon the estimate and calculation of witnesses in regard to value, but upon some fact, such as an offer actually made, or a readiness of some person to give the necessary price whenever the property should be put up for sale. Now, there is no evidence in the case of any fact showing that a sale which would have produced that result was practicable, even in 1836 when it is conceded that the property was at its highest point. We have opinions, and hearsay, and belief of witnesses, but nothing certain on the subject.
Mr. Darrow, the first witness examined by the appellant on this subject, states: “ I think those premises could have been sold in 1836, for $7000; .1 did believe at that time they could have been sold for a greater sum than $7000;” and he goes on to say, that he and one Lipe undertook to negotiate with Van Evera for the purchase ; came to terms with him ; had a contract drawn up which they were about to sign, when Nellis interfered, and had it postponed two weeks, and then the contract fell through. Under that contract the premises would have cost them about $6500, provided no difficulty had occurred with Nellis in securing a title and getting possession. They did apprehend some difficulty in that respect. They negotiated for the purchase with a view to a resale, on which they expected to make $1000, having been informed that Fox & Johnson desired the property, and would pay about $8000 for it. Afterwards he says he “ should think that $7000 was a fair estimated value of those premises in 1836, as real estate generally in Fort Plain was then estimated.” Other witnesses give it as their opinion that the property was worth $8000 and could have been sold for that price; at the *256 same time not knowing any person who wished to purchase, or who had made any offer to purchase at any price.
Some witnesses concur with Mr. Darrow, in putting its fair market value, in 1836, at $7000. Mr. Gen ter, a witness for the defendants, says from $6000 to $7000 ; while Mr. Wagner, a resident of Fort Plain upwards of forty years, an intelligent witness, says that in 1836, real estate in that place was worth more than at any time before or since, and he should think this property might have been sold in the village, in 1836, for $6000. He considered that to be about the fair value of it. Afterwards, from 1837 onward, $5000 was, according to his judgment, about the fair average range of its value.
This sort of evidence falls short of the proof which is necessary in order to give the appellant any benefit of the conditional promise, or to fix a personal liability on Van Evera for not fulfilling it. I think I do not mistake the nature of his contract, when I hold it to be incumbent on those who would found any claim upon it, to show either an actual sale which has yielded a surplus, or that a sale might and could have been effected which would certainly have done so.
The promise or obligation to pay was suspended by the condition. (1 Pothier, 112.) No right of action could arise or accrue until the event, which was in the future, had happened. On the happening of the event the promise was to be performed; and he who claims the performance must show affirmatively that the event has occurred, or the certainty of its occurrence, if nothing was done or omitted to be done to prevent it.
But if the property was capable of being sold in 1836 for $7000, or any other sum which would have produced a surplus, how have the Lintners been injured or prejudiced by Van Evera’s omission to sell it? He restored the property to Nellis on the nineteenth March in the same condi *257 fion, in every respect, that it was in when he took the deed for it, only about forty days before.
No further judgments were recovered against Nellis during that time, or afterwards, to cause any addition to the liens on the property, nor had anything been done in that interval to embarrass or affect the title in Nellis more than it had been by the previous encumbrances. A sale was as feasible then as it was while Van Evera held the legal title, or as it would have been had he continued to hold it. On a sale by either, the judgments would all have to be cleared off or provided for in some way, as well as the mortgages. If a voluntary sale should not be effected, a compulsory sale or sales might be, either by execution on the judgments or by virtue of the mortgages. So far as the Lintners had paid or might pay the debts in judgment against them as Nellis’ endorsers or sureties (the same being also judgments against Nellis), they would be entitled by subrogation to stand in the place of the creditors, and have all the benefit which could be derived from these judgments and from the executions issued upon them as against Nellis and his property. So if sales should happen to be made of the property by virtue of prior judgments and executions, the right to redeem belonged to them. If, therefore, it should be made to appear that there was a chance or a possibility of the Lintners realizing something from a sale of the property by Van Evera, that chance, for aught I see, remained equally good after it was reconveyed to Nellis. It is true it might make some difference to them, if, while Van Evera retained the property for sale, he could be charged with the rent or yearly value of the property, so as to increase the fund, whenever the property should be sold; but it will be observed that the written agreement does not provide for taking the rents into account, and, so far as the Lintners are concerned, they are excluded from any such benefit. The surplus which they have any interest in, is a surplus to arise from a sale of the property—from what Van Evera might *258 realize by and out of the sale—and it is to be a surplus, not over and above the balance of an account which might be due to him, but over and above the specific sum of $2500, with interest thereon to the day of sale. The appellant, therefore, can have no right to invoke into the case any account of rents which Van Evera could or might have received.
It .is said, moreover, that the Lintners have, been prejudiced in another way by Van Evera’s abandonment of the alleged trust; that is, they went on and paid some of the judgments upon the faith of the arrangement. The proofs, however, show that the payments were compulsory, and not voluntary, being made to the sheriff on executions in his hands against them; and they were such payments as they must at all events have made.
From the views which I have thus far presented of this case, it would seem to be unnecessary to look any further into the facts or into the transactions which subsequently took place with respect to the property. They appear to be quite numerous. Nellis remained in possession all along from March, 1836, to March, 1840; occupying the premises as his own. At one time there was a sale of the property under a statute foreclosure of one of the mortgages; Van Evera was the holder of some of the earlier judgments which he had procured to be assigned to him on account of the money he had advanced, and which had been applied to them. Upon these, or some of them, executions were issued and sheriff’s sales were made. Litigation sprung up between Nellis and Van Evera. Jiellis managed to keep the possession, and prevent Van Evera from perfecting a title against him. What became of the rights and claims of the holders of the other judgments, or of his endorsers, who were entitled to be subrogated, does not distinctly appear, except that Abraham Lintner was paid and a release from him obtained. In March, 1840, Nellis made a sale of the property to Robert Crouse, his uncle, for *259 $3000 over and above the mortgages held by Crouse. $2500 of that money was paid by Crouse to Nellis; the rest was thrown off by Nellis for the privilege of remaining as tenant of the premises for. one year. Van Evera was present at this transaction, joined Nellis in releasing the premises to Crouse, because he held the judgment spoken of and the title had once been in him, and at the same time Nellis paid over to Van Evera, $1500 of the money. This money, it is alleged, ought to have been applied to John Lintner’s claim, because as between him and Van Evera it was virtually so much money realized by the latter from a sale of the property, and a- part of what he ought to have received and might have received long before, had he done his duty towards the former. This I understand to be the substance of the argument. It involves the questions which I have already considered as to the character and extent of the obligation assumed by Van Evera, when he signed the paper of the 8th February, 1836, and the insufficiency of the evidence in the cause to fasten such a liability upon him.
Besides, the proofs show that this money was not paid to Van Evera as the vendor of the property. Nellis made the sale and received the money, and then paid over that portion of it to Van Evera, as his creditor upon the assigned judgments, two of which were against the Lintners as well as against himself. In that way John Lintner has been already benefited, in a degree, by this money. I find nothing, in the close of all this business, to strengthen his claim upon Van Evera for anything more.
For these reasons, and others to be found in the prevailing opinion of the court below, I think the decree of dismissal ought to be affirmed.
Decree reversed and special decree made in accordance with the opinion of Jewett, J.